**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DAWN RAE ABBOTT,

      Plaintiff,

vs.                                                            CASE NO. 3:12-cv-59-J-TEM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.[1]

_____

## ORDER AND OPINION

      This case is before the Court on Plaintiff's complaint (Doc. #1).  Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and for supplemental security income (SSI) disability payments.  *Id.*  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

      Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #12, Plaintiff's Brief).  Defendant filed her brief in support of the decision to deny disability benefits (Doc. #15, Defendant's Brief).  The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Reference Order dated April 12, 2012 (Doc. #10).

_____

      [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record.  For the reasons set out herein, the decision is **AFFIRMED**.

## I.  Procedural History

Plaintiff, Dawn Rae Abbott, filed for DIB and SSI on May 18, 2009, alleging disability as of August 3, 2006 (Tr. 108-19).  Her initial applications were denied, as was her request for reconsideration.  She timely requested a hearing, which was ultimately held on July 29, 2010, in Jacksonville, Florida, before Administrative Law Judge (ALJ) Robert Droker (Tr. 29-47).  Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Melissa Tanner Brooks.  *Id.*  Plaintiff was represented throughout the hearing by Erik W. Berger (Tr. 28).  On August 25, 2010, the ALJ issued an unfavorable decision (Tr.  7-22).  Plaintiff requested review of the decision by the Appeals Council (AC); however, the AC denied her request, making the hearing decision the final decision of the Commissioner (Tr. 1-6).  Plaintiff's counsel filed the complaint (Doc. #1) in federal court on January 19, 2012.

## II. Social Security Act Eligibility,
## the ALJ's Decision and the Standard of Review

A plaintiff is entitled to disability benefits only if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[2]  The Commissioner has established a

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections

five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through step four while at step five, the burden shifts temporarily to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).

The ALJ's decision dated August 25, 2010, denied Plaintiff's claims (Tr. 7-22). At step one, ALJ Droker found Plaintiff had not engaged in substantial gainful activity since August 3, 2006, the alleged onset date of her disability (Tr. 12). The ALJ also found Plaintiff met the insured status requirements of the Social Security Act for DIB through December 31, 2011. *Id.* At step two, the ALJ found Plaintiff had severe impairments of: "disorders of the back including spondylolisthesis, degenerative disk disease, and herniation of the cervical and lumbar spine, status post fusion surgery; generalized anxiety disorder; and affective disorder." *Id.* At step three, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with limitations (Tr. 14). ALJ Droker specifically found Plaintiff is limited to lifting and carrying ten pounds, needs the opportunity

---

in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

to sit or stand at will, must avoid ladders and unprotected heights, and must avoid the operation of heavy machinery. *Id.* The ALJ further limited Plaintiff's work to simple tasks that avoid unusual stress. *Id.* While he found Plaintiff can occasionally bend, stoop, squat, crouch, kneel or crawl, the ALJ also determined Plaintiff must avoid the operation of foot controls. *Id.* At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a surgical technician (Tr. 20).

At step five, taking into consideration Plaintiff's age, education, work experience, and residual functional capacity (RFC), the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite her impairments. *Id.* Accordingly, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 22).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable, as well as unfavorable, to the decision. *Foote*, 67 F.3d at 1560.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *see also Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined

4

as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### III. Analysis

Plaintiff, who was born on April 12, 1967, is now a forty-five year old female (Tr. 31). Plaintiff has a high school education with no additional training (Tr. 32). Plaintiff is able to read, write and understand English (Tr. 129). Plaintiff describes her past relevant work as that of an ophthalmic scrub technician; the VE identified the job as a surgical technician (Tr. 43, 131). Plaintiff claims she is disabled due to her scoliosis, spinal stenosis and spondylolysis (Tr. 130). Plaintiff asserts she is in constant pain and has poor concentration due to the pain. *Id.*

Plaintiff raises two issues on appeal. First, Plaintiff asserts the ALJ erred when he failed to include the specific finding that Ms. Abbott could perform "simple, repetitive one

to two step tasks" in his residual functional capacity assessment of Plaintiff's abilities and in the hypothetical questions posed to the VE at the hearing.  Plaintiff's Brief at 1, 12-19. Second, Plaintiff argues that the ALJ did not properly evaluate the medical opinions regarding the severity of Ms. Abbott's impairments offered by Dr. Ladonna Dahl, Psy.D., and Mr. Scott Siegel, P.A.  *Id.* at 1, 19-24.

The Commissioner responds that the ALJ's decision was based on substantial evidence and should be affirmed.  Defendant's Brief at 4.  The Commissioner argues that the ALJ incorporated Plaintiff's limitations in concentration, persistence, or pace into the RFC assessment and hypothetical questions through implicit reference.  *Id.* at 7-8.  The Commissioner further posits that the ALJ's rationale for finding Plaintiff was moderately limited in concentration, persistence, or pace domain is not the equivalent of determining Plaintiff's RFC.  *Id.* at 8-12.  Additionally, the Commissioner argues that the ALJ properly reviewed and considered the opinion evidence in this case, in part because neither of the sources of those opinions was a treating physician.  Defendant's Brief at 12-17.  Moreover, Defendant asserts the ALJ stated his reasons for the weight given to these opinions, and substantial evidence exists in the record to support the reasons given.  *Id.* at 14.

**Plaintiff's Residual Functional Capacity and the ALJ's Hypothetical Question**

Plaintiff asserts that the ALJ's failure to include a limitation that Plaintiff can perform only "simple, repetitive, one to two step tasks" in Plaintiff's RFC and in the hypothetical questions undermines the ultimate determination that Plaintiff is not disabled under the Social Security Act.  Plaintiff's Brief at 16-17.  The Court disagrees.  For clarity, the RFC and hypothetical questions will be discussed separately.

6

Plaintiff's Residual Functional Capacity

Plaintiff argues the ALJ improperly evaluated Plaintiff's RFC. Plaintiff asserts the ALJ's failure to include the finding that Plaintiff is limited to "simple, repetitive, one to two step tasks" in the RFC finding is reversible error. Plaintiff's Brief at 16. Having considered this argument, however, the Court finds it is unique, but ultimately without merit in this case. In addressing the issue, the Court must ascertain if substantial evidence supports the ALJ's determination of Plaintiff's RFC.

The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work. 20 C.F.R. § 404.1545. The RFC is "the most [Plaintiff] can do despite [Plaintiff's] limitations. *Id.* The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences. *Lewis v. Callahan*, 125 F.3d at 1436, 1440 (11th Cir. 1997). In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments. *Id.* In this case, the ALJ ultimately found Plaintiff had the residual functional capacity to perform a range of light work (Tr. 14). Specifically, the ALJ found:

> the claimant has the [RFC] to perform light work . . . She is limited to lifting and carrying ten pounds. The claimant needs the opportunity to sit or stand at will. She must avoid ladders and unprotected heights and must avoid the operation of heavy moving machinery. She is limited to simple tasks and must avoid unusual stress. She can occasionally bend, stoop, squat, crouch, kneel, or crawl. She must avoid the operation of foot controls.

*Id.* (citations omitted).

As noted earlier, ALJ Droker found Plaintiff had both severe physical and severe

mental impairments.  To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 404.1520a.  In accordance with those requirements, the ALJ found Plaintiff's severe mental impairments caused mild restrictions in Plaintiff's activities of daily living, mild difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 13).  *See* 20 C.F.R. § 404.1520a(c)(4).  In making these findings, the ALJ stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929 and SSRs 96-4p and 96-7p" (Tr. 14).

The effects of an impairment are measured by the limitations on the ability to work. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe).  Regarding Plaintiff's mental limitations, the ALJ found Plaintiff can sustain a greater capacity to work than she described at the hearing or in her reports to state agencies (Tr. 20).  The Court's independent review of the record finds substantial evidence supports Plaintiff can perform the range of work activities stated in Plaintiff's RFC, which exceeds the limitations Plaintiff argues should have been included in the RFC.  *See* Plaintiff's Brief at 12-19.

Plaintiff argues,

There can be no dispute that the ALJ found Ms. Abbott's medically determinable impairments of generalized anxiety disorder and affective disorder resulted in the following limitations on her ability to work: (1) Limited to simple tasks; (2) Limited to repetitive tasks; (3) Limited to 1 to 2 step tasks; (4) Avoidance of unusual stress and (5) Entry level jobs.

8

*Id.* at 16.   To the contrary, the Court finds reasonable persons could read the ALJ's decision and dispute this argument.   When accounting for finding Plaintiff was moderately limited in the concentration, persistence or pace domain, ALJ Roker stated, "The claimant has difficulty sustaining focused attention and concentration sufficiently long enough to permit the timely and appropriated (sic) completion of more complex tasks; however she retains the ability to perform simple, repetitive, one to two step tasks" (Tr. 13).   The ALJ did not find Plaintiff was limited to <u>only</u> simple, repetitive, one to two step tasks.   Reasonable persons can differ on whether the ALJ's statement conveyed the most or the least Plaintiff could perform in work related tasks that fall within the concentration, persistence or pace domain.

Unlike ascertaining Plaintiff's residual functional capacity, which by definition is the most a claimant can do with her impairments, there are no regulations or guidelines specifying the meaning behind the ALJ's rationale for finding Plaintiff moderately limited in this one domain of functioning.   Plaintiff's argument actually stacks the ALJ's reasoning for finding Plaintiff moderately limited in one of the five domains of functioning on top of the ALJ's residual functional capacity assessment of Plaintiff.   This attempt to further restrict Plaintiff's mental capacity for work is belied by the overall evidence of record.   The question before the Court is whether substantial evidence supports the ALJ's findings such that a reasonable person would agree with the ALJ's conclusion that Plaintiff is not disabled under the Social Security Act.   *See Foote v. Chater*, 67 F.3d at 1560; *also see Bloodsworth,* 703 F.2d at 1239.

The Court's independent review of the record reveals substantial evidence exists to

support the ALJ's finding of Plaintiff's RFC.[3]  While there is evidence in the record that Plaintiff may have "difficulty making decisions, relating with others, and appropriately dealing with stress," there is also evidence to support the assertion that she "will be able to learn new tasks and perform complex tasks independently" (Tr. 353).  Dr. Gildegardo Alidon, M.D., reviewed Plaintiff's record on March 31, 2010 and found Plaintiff "remain[ed] fully functional from a mental perspective" (Tr. 363-76).  Furthermore, Dr. Alidon assessed Plaintiff was only mildly limited in each of the domains of functioning, with no episodes of decompensation (Tr. 363).  Dr. Ladonna Dahl, the examining psychologist, found Plaintiff's "thought process is coherent and goal directed . . ." (Tr. 351).  Additionally, Dr. Joseph M. Shaugnessey's physician notes from Neurotech described Plaintiff's mental status as "alert and oriented," and found Plaintiff had "good insight and judgment" (Tr. 296, 301, 330).[4]

It is this Court's duty to review the ALJ's decision to determine whether his ultimate determination that the claimant is not disabled under the Social Security Act  is supported by substantial evidence in the record; it is not this Court's duty, nor this Court's place to create guidelines not in existence. From review of this record, a reasonable mind could determine that Plaintiff is able to perform work related duties encompassing more than

---

[3]Because Plaintiff's argument on this issue centers on Plaintiff's mental RFC, the Court's analysis also focuses on the mental RFC.

[4]Although Plaintiff was most often seen by Dr. Shaugnessey's physican's assistant, Scott Siegel, Dr. Shaugnessey signed off on the office visit / treatment notes as having occurred under his supervision.  Furthermore, Dr. Shaugnessey did not sign off on the Physical Residual Functional Capacity Questionnaire completed by Siegel in December 2009 (see Tr. 286-89).  Rather, Dr. Shaugnessey did complete the Supplemental Mental Impairment Questionnaire in which he marked that Plaintiff's mental impairment did significantly interfere with her daily functioning (Tr. 314) and to which the ALJ explicitly referred in his decision and gave great weight (Tr. 18).

repetitive, one to two step tasks.  Despite diagnoses of generalized anxiety disorder, with isolated instances of reported panic attacks triggered by marital discord and her son's legal problems, Plaintiff was treated conservatively by a physician's assistant who prescribed Wellbutrin[5] in August 2009 (Tr. 296-97) and added Trazodone[6] as a sleep aid in October 2009 (Tr. 300-03).  There is no record of Plaintiff seeking other mental health treatment. Moreover, as noted above, Plaintiff was found also to have good insight and judgment during this same time period (Tr. 296-301) and to be fully functional from a mental perspective in March 2010 (Tr. 375).

SSR 96-8p provides guidelines in assessing a claimant's residual functional capacity.  In reviewing those guidelines, the Court finds no error in the ALJ's RFC assessment.  The ALJ not only pointed to record evidence that supports his determination of Plaintiff's mental residual functional capacity (i.e., the report of the state agency physician and the examining psychologist, the treatment notes, Plaintiff's testimony and the report of Plaintiff's treating physician) (Tr. 16-18), he implicitly accounted for all of Plaintiff's moderate mental limitations in the domain of concentration, persistence or pace in the RFC with the restriction to simple tasks and no unusual stress.  Thus, Plaintiff's mental RFC assessment was determined in accord with the prevailing case law within our circuit.  *See*

---

[5]"Wellbutrin (bupropion) is an antidepressant medication. It works in the brain to treat depression. Wellbutrin is used to treat major depressive disorder and seasonal affective disorder."  *See* http://www.drugs.com/search.php?searchterm=Wellbutrin (last visited 2/28/2013).

[6]"Trazodone (trazadone) is a tetracyclic antidepressant. It is thought to increase the activity of one of the brain chemicals (serotonin), which helps elevate mood. . . Trazodone (trazadone) may also be used for relief of an anxiety disorder (eg, sleeplessness, tension), chronic pain."  *See* http://www.drugs.com/misspellings/trazadone.html (last visited 2/28/2013).

*Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176,1180-81 (11th Cir. 2011) (ALJ must specifically account for plaintiff's moderate limitations in concentration, persistence or pace, which may be found by reference to supporting medical evidence, or otherwise implicit or explicit statements in the hypothetical question asked of the vocational expert); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (finding an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounted for moderate limitations in concentration, persistence or pace where the medical evidence demonstrated the claimant retained the ability to perform such tasks).

The ALJ's Use of Hypothetical Questions

Plaintiff similarly argues the ALJ erred by not explicitly or implicitly including Plaintiff's moderate limitation to "simple" tasks, "repetitive tasks" or "1 to 2 step" tasks in the hypothetical questions asked to Melissa Brooks, a vocational expert.  Plaintiff's Brief at 16.

Hypothetical questions are tools used by the ALJ to introduce independent evidence of the existence of jobs in the national economy that a claimant can perform.  *See Bouie v. Astrue*, 226 Fed. Appx. 892, 894 (11th Cir. 2007); *Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1228 (M.D. Fla. 2002) (the goal when using a vocational expert is to determine whether the claimant can perform other work in the economy).  Thus, hypothetical questions do not function as tools to assess a plaintiff's residual functional capacity, but as tools to determine what jobs an individual with particular characteristics and limitations can perform.  *See Bouie*, 226 Fed. Appx. at 894.

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical question posed to the VE must include all impairments of the particular plaintiff for the VE's testimony to

12

constitute substantial evidence upon which the ALJ may rely in making the disability determination. *Winschel*, 631 F.3d at 1180; *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). However, the ALJ is not required to include any limitations offered by Plaintiff's counsel or Plaintiff's medical sources that were not supported by substantial evidence and/or were properly discounted. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, "[a] 'hypothetical question[ ] adequately account[s] for a claimant's limitations . . . when the question[ ] otherwise implicitly account[s] for the [ ] limitations.'" *Kinnard v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 835, 837 (11th Cir. 2011) (quoting *Winschel*, 631 F.3d at 1180) (alteration in original); *Syed v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 632, 635 (11th Cir. 2011) (finding "although the hypothetical question posed by the ALJ to the VE did not expressly include Syed's impairments, it implicitly accounted for them, and thus, was not improper") (citing *Winschel*, 631 F.3d at 1180-81). In this instance, the Court has found Plaintiff's assertion that she is so limited by her mental impairment she can perform only jobs that require no more than simple, repetitive, one to two step tasks is not supported by substantial evidence. Thus, such a limitation need not be included in the hypothetical questions asked of the vocational expert.

At the June 10, 2010 administrative hearing, vocational expert Melissa Brooks testified (Tr. 42-46). Ms. Brooks was present for the entire hearing, thus she heard Plaintiff's testimony before testifying herself (*see* Tr. 30). The ALJ posed two hypothetical questions to the VE (Tr. 43-46). The ALJ first asked:

> Assume I find that the claimant is 43 years old, has a GED.
> Assume further that I find she can perform light work, but has
> a 10 pound maximum weight lift. Assume further that she has

> the following exertional and non-exertional impairments that limit function. She needs a sit/stand option. She needs to avoid ladders or unprotected heights. She needs to avoid the operation of heavy, moving machinery. She needs to avoid unusual stress. She can only occasionally bend, crouch, kneel, stoop, squat, or crawl. She needs to avoid the operation of foot controls. Can she perform any of her past work?

(Tr. 43).  To this, the Ms. Brooks stated that such a person would not be able to perform

Plaintiff's past relevant work.  *Id.*  The ALJ's next hypothetical asked:

> Let's go down to entry-level and assume the claimant has no skills or semi-skills at all, and that she's the age I've previously described and has the work experience and education previously stated. Assume further that she could perform light work, has the exertional and non-exertional limitations I previously described. Are there any entry-level jobs the claimant could perform? If so, could you give us the title of the job, number of jobs in the region, which I've defined as the State of Florida. If there's non-included sedentary level jobs, could you describe those as well?

(Tr. 44).  The VE responded that there were jobs available that the Plaintiff could perform.

*Id.* Such jobs included ticket seller, cashier II, and addresser.  *Id.*

The operative hypothetical was more than sufficient to account for Plaintiff's

moderate limitation in concentration, persistence or pace.   The medical evidence

demonstrates that Plaintiff retains the ability to perform simple tasks despite concentration

deficiencies (*see, e.g.*, Tr. 33, 127, 296, 301, 330, 351-54, 375).  *See Syed*, 441 Fed. Appx.

at 635.  The record does not support an inference that the most Plaintiff can perform with

her moderate mental limitation is simple, repetitive, one to two steps tasks.  The ALJ's

hypothetical, stating Plaintiff "needs to avoid unusual stress," and that jobs to be

considered need to be "entry-level" adequately accounted for Plaintiff's moderate limitation

in concentration, persistence or pace.  *See, e.g.*, *Jarrett*, 422 Fed. Appx. at 872; *see also*

*Winschel*, 631 F.3d at 1180-81 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence or pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citations omitted).[7]

The Court finds the ALJ's hypothetical questions adequately accounted for Plaintiff's moderate limitation in concentration, persistence or pace.  Thus, the VE's testimony is substantial evidence on which the ALJ could rely in making his step five finding.  Plaintiff's argument to the contrary is misplaced.

**Consideration of the Medical Opinion Evidence**

Plaintiff takes issue with the ALJ's reasoning in how the ALJ assessed the medical opinions of Dr. Dahl, an examining psychologist, and Mr. Siegel, a treating physician's assistant.  Plaintiff's Brief at 19.  Plaintiff argue that the ALJ's reasoning was insufficient to reject or ignore this opinion evidence.  *Id.*  Plaintiff is mistaken.  First, the ALJ did not reject or ignore these medical opinions.  In fact, the ALJ refers extensively to the opinions stated by Dr. Dahl and Mr. Siegel (Tr. 17-20).  Second, the ALJ stated his reasons for the weight he gave these opinions, and those reasons are factually correct and are supported by substantial evidence in the record.

The Regulations define a medical opinion as, "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature

---

[7]Having found substantial evidence supports the ALJ's determination of Plaintiff's RFC, and having found all of Plaintiff's impairments were reasonably accounted for in the hypothetical questions posed to the vocational expert, the Court need not reach Plaintiff's argument regarding the reasoning levels associated with the representative jobs identified by the vocational expert.

and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions. " 20 C.F.R. § 404.1527.  While a psychologist is considered an acceptable medical source under the Regulations pertaining to Social Security disability applications, physicians' assistants are not.  *See* 20 C.F.R. § 404.1513(a), (d).  Physicians' assistants are considered other sources, whose opinion evidence will be considered in conjunction with all the evidence of record.  *See* 20 C.F.R. §§ 404.1513(d), 404.1502, 404.1520b.  The weight afforded a medical source's opinion depends upon the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. *See* 20 C.F.R. § 404.1527(c).   The ALJ may reject the opinion of any medical source when it is inconsistent with the evidence.  *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983).

### *The Examining Psychologist*

Dr. Dahl conducted a single psychological evaluation of Plaintiff on February 24, 2010 (Tr. 349-54).  From that consultation, Dr. Dahl concluded Plaintiff was able to follow and understand simple directions and instructions, able to perform simple tasks independently and maintain concentration, but unable to maintain a regular schedule due to her medical problems and back surgeries.  *Id.*  Dr. Dahl also concluded that Plaintiff would be able to learn new tasks and perform complex tasks independently, but have difficulty making appropriate decisions, relating with others, handling money, and appropriately dealing with stress because of her psychiatric problems and not being on appropriate medication.  *Id.*  The ALJ gave great weight to Dr. Dahl's opinion as it related

16

to claimant's mental impairment, but gave little weight to the portion of Dr. Dahl's opinion that related to Plaintiff's physical ability to maintain a regular work schedule (Tr. 17).

In, essentially, discounting Dr. Dahl's the statements regarding Plaintiff's physical capabilities, the ALJ correctly found that Dr. Dahl "relied quite heavily on the subjective report of symptoms and limitations provided by the [Plaintiff], and seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id.* There is no indication in Dr. Dahl's report that she relied on any objective medical evidence in developing her opinions. It appears the totality of the evidence came from Plaintiff's statements. The ALJ further reasoned that "there exist good reasons for questioning the reliability of the [Plaintiff]'s subjective complaints." *Id.*

Significantly, Plaintiff does not challenge the ALJ's credibility finding. ALJ Droker found Plaintiff was less than fully credible in her statements concerning the intensity, persistence and limiting effects of her symptoms (Tr. 19). In this regard, the ALJ found: (1) Plaintiff's assertions of pain exceed the medical and other evidence of record; (2) Plaintiff at times was non-compliant in taking her medication; (3) Plaintiff was obtaining additional medication from a provider other than her primary care physician and surgeon without her doctors' knowledge; (4) Plaintiff failed a urine drug screen; and, (5) Plaintiff failed to appear for a number of appointments with Dr. Ero after she was told he would not write prescription medication until he discussed the matter of the additional medications with her at her next appointment. *Id.* These findings are supported by substantial evidence in the record.

Moreover, Dr. Dahl not only was an examining source who saw Plaintiff on a single occasion, Dr. Dahl's credentials are that of a psychologist. Any opinions regarding Plaintiff's physical capabilities fall outside Dr. Dahl's area of specialty. *See* 20 C.F.R. §

17

1527(c) (discussing factors considered in weighing medical opinions include nature and length of the "treatment" relationship, as well as the provider's area of specialty).

The ALJ's decision clearly states that portions of Dr. Dahl's opinion were afforded great weight, and other portions of Dr. Dahl's opinion were afforded little weight  (Tr. 17). There is substantial evidence in the record to support this assignment of weight, as parts of Dr. Dahl's opinion relating to Plaintiff's ability to maintain a regular work schedule conflict with evidence offered by an examining physician and a reviewing physician (Tr. 278-85, 356-62).  If the ALJ failed to specifically discuss each separate iota of Dr. Dahl's medical opinion, as Plaintiff suggests, such failure is harmless in light of the fact that the ALJ considered Dr. Dahl's medical opinion and balanced it based on the other medical evidence in the record. *See* Plaintiff's Brief at 20 (*also see* Tr. 17).  Thus, the Court finds the ALJ gave proper consideration to Dr. Dahl's opinion evidence.

### The Physician's Assistant

In this instance, Plaintiff physically saw her treating physician's assistant more regularly than she saw her treating physician (*see* Tr. 235-65, 290-308, 314-48, 377-98). Significantly, Dr. Joseph Shaughnessy, M.D., signed off on the treatment records and notes entered by the physician's assistant.  *See id.*   The physician's assistant, Mr. Scott Siegel, however,  completed a Physical Residual Functional Capacity Questionnaire for the Plaintiff in December 2009 (Tr. 286-89).  The responses to that questionnaire were not reviewed and signed by Dr. Shaughnessy.  Mr. Siegel's opinion, embodied in the questionnaire, was that Plaintiff had "more bad days than good days," Plaintiff would be unable to maintain a regular schedule because of her need to take unscheduled days off work, Plaintiff had an inability to sit or stand/walk for longer than two hours, and Plaintiff had a need to take

18

fifteen to thirty minute breaks "at least hourly" (Tr. 287-88).

Upon review of the record, this Court affirms the ALJ's decision to afford Mr. Siegel's opinion little weight because the opinion was "not supported by the other objective medical evidence of record and [was] inconsistent with the other substantial evidence in the record" (Tr. 19).  Mr. Siegel's treatment notes did not bolster his opinion that Plaintiff is unable to work; the notes detail back pain and other impairments, but are silent on the extent these impairments may affect Plaintiff's ability to maintain a regular work schedule (Tr. 235-65, 290-347, 378-84, 386-95).  Further, the opinion evidence from the reviewing physicians, Dr. Marc Tafflin, D.O. (Tr. 278-85), and Dr. Donald Morford, M.D. (Tr. 355-62), also does not support the extreme limitations assessed by the physician's assistant.  Dr. Tafflin found the record revealed that Plaintiff needs to alternate between sitting and standing, and needs breaks throughout the work day, but did not determine these restrictions to preclude Plaintiff's ability to work (Tr. 278-85).  Dr. Tafflin's opinion was echoed by Dr. Morford, who found Plaintiff was able to maintain a regular work schedule with some minor modifications (Tr. 362).

Upon review, the Court finds no reversible error in the ALJ's consideration of the medical opinion evidence.

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.  Accordingly, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment

consistent with this Order and Opinion and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 7th___day of March, 2013.


_____
THOMAS E. MORRIS
United States Magistrate Judge


Copies to all counsel of record
         and *pro se* parties, if any